UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                    :
UNITED STATES OF AMERICA           :
                                                    :          CASE NO. 5:12-CR-380
                        Plaintiff,              :
                                                    :
vs.                                                :          OPINION & ORDER
                                                    :          [Partially Resolving Doc. No. 11]
XIAORONG WANG,                        :
                                                    :
                        Defendant.           :
                                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Xiaorong Wang moves the Court to suppress statements made during an interview conducted by federal agents during a search of his home.  [Doc. 11.]  The United States of America opposes the motion.  [Doc. 15.]  On September 20, 2012, the Court held a suppression hearing. During the hearing, the Government called FBI Special Agent Andrew Havrilla and Wang testified in his defense.  For the reasons that follow, the Court **GRANTS** the Defendant's motion to suppress Wang's statements made on April 16, 2010.  The Defendant's motion to suppress other statements is **DENIED**.

I.  Background

In this case, the United States charges the Defendant with multiple counts each of theft of trade secrets and making false statements.  [Doc. 1.]  The Government bases its trade secret charges on Wang's activities while employed as a research scientist at the Bridgestone Center for Research and Technology in Akron, Ohio and his activities immediately following Bridgestone's firing Wang.

Case No. 5:12-CR-380
Gwin, J.

[*Id.*] Further, the Government bases its false statement charges on statements made by Wang to federal agents during three interviews in 2010.  [*Id.*] Four of those false-statement charges—Counts Nine through Twelve—arise out of an interrogation on April 16, 2010 at Wang's home.  [*Id.*] It is that interrogation that is the subject of this order.

On April 16, 2010, the FBI obtained and executed a search warrant for Wang's home in Hudson, Ohio.  The parties disagree as to how many agents arrived at the home, but the number ranges from between eight agents and two support specialists (Agent Havrilla's recollection) to a dozen agents (Wang's).  Wang met the agents outside of his home.  Although Agent Havrilla could not recall whether the agents arrived with their firearms drawn, he did testify that is normal policy for agents to have weapons drawn when conducting such a search.  Wang also contends that the agents arrived, guns drawn.

Agent Havrilla and another agent then requested that Wang come into the home and take a seat at his kitchen table.  Although Agent Havrilla testified that he told Wang that he was not under arrest and free to leave, a closer reading of the testimony suggests that Agent Havrilla's testimony is based on his usual practice, and not on actual recollections or notes of his encounter with Wang.  During cross-examination, Agent Havrilla stated that "I don't recall the exact words, but usually I sit down during an interview and tell them that it is voluntarily and they can leave at this time."  Agent Havrilla gave no testimony that he ever specifically told Wang that Wang was free to leave the interview.  The agents proceeded to interrogate Wang for anywhere between forty-five minutes to over an hour.

During their conversation, Agent Havrilla told Wang that he was not free to walk around his home while agents conducted their search.  Wang also testified that he asked to pick up his son from

Case No. 5:12-CR-380
Gwin, J.

daycare, but agents told him that Wang needed to make alternative arrangements.  The Government did not controvert this statement.  Wang further stated that he asked to meet his wife who was a block away from the home, but was told to remain in the kitchen.  This, too, is uncontroverted.  The parties agree that Wang was able to make or answer calls during this period, but was told by the agents to speak English during them (Wang is a native Chinese speaker).  The interrogation was not taped, and Wang was not read his *Miranda* rights.

II. Legal Standard

The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), requires that when a defendant is taken into custody and subjected to questioning, he must be warned that he has the right to remain silent, and that anything he says can be used against him in a court of law.  A defendant must also be told that he has the right to the presence of an attorney, and if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.* "[I]ncriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her *Miranda* rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.1998) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

*Miranda* warnings are required prior to custodial interrogation. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.  In *Salvo*, the Sixth Circuit noted that, "[i]n applying Supreme Court precedent to questions of whether a defendant was 'in custody' for *Miranda* purposes, the Courts of Appeals have relied

Case No. 5:12-CR-380
Gwin, J.

on a totality of circumstances approach to determine 'how a reasonable man in the suspect's position

would have understood the situation.'" *Salvo*, 133 F.3d at 948 (quoting *United States v. Phillip*, 948

F.2d 241, 247 (6th Cir.1991) (citations omitted)). Among the factors that courts have relied upon are:

> (1) the purpose of the questioning; (2) whether the place of the questioning was
> hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody
> such as whether the suspect was informed at the time that the questioning was
> voluntary or that the suspect was free to leave or to request the officers to do so;
> whether the suspect possessed unrestrained freedom of movement during
> questioning; and whether the suspect initiated contact with the police or voluntarily
> admitted the officers to the residence and acquiesced to their requests to answer some
> questions.

*Id.* at 950.  A reviewing court determines whether or not a defendant is in custody by "considering

the 'objective circumstances of the interrogation,' rather than the 'subjective views harbored by

either the interrogating officers or the person being questioned.'" *Id.*

### III. Analysis

A recent case from the Sixth Circuit seems to tip the scale against finding an interrogation

custodial if it took place in the suspect's home.  *United States v. Panak*, 552 F.3d 462, 465-66 (6th

Cir. 2009).  This Court agrees that an interrogation taking place in a suspect's home can speak to

whether the interrogation is in a "hostile or coercive" environment, *Salvo*, 133 F.3d at 950.  But, a

home interrogation can be custodial, especially when factors such as "[t]he number of officers, the

show of authority, the conspicuous display of drawn weapons, [and] the nature of the questioning"

suggest a deprivation of liberty.  *Panak*, 552 F.3d at 466.  With those factors, at least three of which

are present here, it is unreasonable to believe that a suspect could feel that he could walk out the door

at any time.  *See also United States v. Morrow*, 2011 WL 3298880, at *11 (N.D. Ohio Aug. 2, 2011)

(finding an interrogation to be custodial when there was "restraint on Defendant's freedom of

movement while the officers were present in his home").  Wang's situation is also distinguishable

-4-

Case No. 5:12-CR-380
Gwin, J.

from that in *United States v. Jewell*, 16 F. App'x 295, 297-98 (6th Cir. 2001), which also involved a defendant being questioned for about an hour in his kitchen.  The crucial difference, and this cannot be overstated, is that the defendant in *Jewell* was told that he could leave the home; Wang was told the opposite.

Under the totality of the circumstances in this case, the Court finds that the facts establish that Wang was subject to a custodial interrogation on April 16, 2010.  Numberous (twelve, ten, or eight) agents swarmed his home, guns drawn, and patted him down.  They told him to come inside the home, sit down, and answer questions.  They told him not to leave to pick up his child or meet his wife.  And then they told him that any phone conversation he had must take place in a foreign (to him) language.  A reasonable person would not believe that he was free to leave—and perhaps most importantly—the uncontroverted testimony establishes that Wang was, in fact, not free to leave.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to suppress statements made during the interrogation on April 16, 2010.  [Doc. 11.]  The Court **DENIES** the motion to suppress the statements made on May 17 and December 1, 2010.

IT IS SO ORDERED.


Dated: September 21, 2012                         *s/   James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE